**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**

XUGUANG CHANG, JUN NING, HAITAO WANG a/k/a
LEO WANG, and CHUAN HUI WANG, on their own
behalf and on behalf of others similarly situated,

Plaintiffs,

v.

Case No.: 1:18-cv-06174

CK TOURS, INC d/b/a CK TOURS; d/b/a DA XING
TOURS; WIN LI TOURS, INC d/b/a WIN LI TOUR;
d/b/a HENG XING TOUR; SKYLINER TRAVEL &
TOUR BUS CORP d/b/a SKYLINER TRAVEL; HYON-
SAK KIM a/k/a PETER KIM, and JOANNA LAU a/k/a
KIN-CHING LAU,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Diana Y. Seo, Esq.
Hang & Associates, PLLC
136-20 38th Avenue, Ste 10G
Flushing, NY 11354

## TABLE OF CONTENT

I.   PRELIMINARY STATEMENT .................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 1

III. ARGUMENT ............................................................................................. 5

   A.  SUMMARY JUDGMENT STANDARD ............................................... 5

   B.  PLAINTIFFS' FEDERAL CLAIMS UNDER FLSA SHOULD BE DISMISSED
   BECAUSE THEY ARE EXEMPT EMPLOYEES UNDER THE MOTOR CARRIER
   ACT ........................................................................................................... 6

      1.  The Motor Carrier Act Has the "Power To" Establish the Maximum Hours of Service
      of Motor-Carrier Employers' Employees. ........................................................ 6

      2.  Plaintiffs Had the Duty of Performing the "Safety-Affecting Activities on Motor
      Vehicles" as Attendants on the Motor Vehicle ................................................ 11

   C.  THE CLAIMS AGAINST CORPORATE DEFENDANT SKYLINER AND
   INDIVIDUAL DEFENDANT PETER KIM SHOULD BE DISMISSED BECAUSE
   THEY ARE NOT EMPLOYERS OF PLAINTIFF .......................................... 14

      1.  Skyliner and Peter Kim Are Not Employers under the Economic Realities Test ........ 16

      2.  Skyliner and Peter Kim Did Not Have Operational Control of CK Tours and Win Li
      Tours. ............................................................................................................ 17

      3.  Skyline and Peter Kim Are Not Employers Because They Did Not Exert Any Financial
      Control Over CK Tours and Win Li Tours .......................................................... 20

   I.  CONCLUSION .......................................................................................... 22

## CASES

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150 (11th Cir. 2008).............. 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986) ........................... 5, 6

*Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.2d 184 (S.D.N.Y. 2003) ...................... 18

*Auclair v. United States, 72* F. Supp. 160 (D. Mass. 1947)........................................................ 10

*Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998)............................. 18

*Bilyou v. Dutchess Beer Distributors, Inc.,* 300 F.3d 217, 222 fn. 2 (2d Cir. 2002) .................... 7

*Boutell v. Walling*, 327 U.S. 463, 66 S. Ct. 631 (1946).................................................................. 9

*Calvin v. United States,* 44 F. Supp. 684 (D. Mo. 1942) ............................................................. 10

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir.1984) .......................................................... 15

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986)........................ 5

*Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007) ............................................................... 20

*Chao v. Vidtape*, Inc., 196 F.Supp.2d 281 (E.D.N.Y. 2002) ...................................................... 21

*Cleveland, C., C. & St. L. R. Co. v. Dettlebach,* 239 U.S. 588, 36 S.Ct. 177, 60 L. Ed. 453 (1916)

.................................................................................................................................................. 10

*Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ........................... 15

*Dauphin v. Chestnut Ridge Transportation, Inc.*, 544 F. Supp. 2d 266, 274-275 (S.D.N.Y. 2008)14

*Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991).............................................. 20

*Dole v. Simpson*, 784 F. Supp. 538 (S. D. Ind. 1991) ............................................................ 19, 20

*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983)..................................................................... 21

*Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984) ........................................................ 20

*Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190 (5th Cir. 1983)........................................ 18

*Falk v. Brennan*, 414 U.S. 190 (1973) ....................................................................................... 18

*Fermin v. Las Delicias Peruanas Rest.*, *Inc.*, 93 F. Supp. 3d 19 (E.D.N.Y. 2015) ..................... 17

*Fox v. Commonwealth Worldwide Chauffeured Transp*. NY, 865 F. Supp. 2d 257, 268 (E.D.N.Y.
 2012) (Garaufis, J.) .................................................................................................... 8

*Gibson v. American Broadcasting Companies, Inc.,* 892 F.2d 1128 (2d Cir. 1989) .................... 5

*Gloucester Ferry Co. v. Pennsylvania,* 114 U.S. 196, 5 S. Ct. 826, 29 L. Ed. 158 (1885) ...... 9, 10

*Hayward v. IBI Armored Servs.*, 954 F.3d 573, 576 (2d Cir. 2020) ................................................ 8

*Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999) ..................................... 17, 18, 20

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir.2013) ............................................................. 15, 17

*Jiao v. Shi Ya Chen*, No. 03 Civ. 165 (DF), 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767
 (S.D.N.Y. Mar. 30, 2007). .......................................................................................... 15

*Karic v. Major Auto. Cos.*, 992 F.Supp.2d 196 (E.D.N.Y.2014) .................................................. 15

*Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ........................ 21

*Kim v. Kum Gang, Inc.*, 12 Civ. 6344(MHD), 2015 WL 2222438 (S.D.N.Y. Mar. 19, 2015)
 (Dolinger, M.J.) ........................................................................................................... 15

*Lauria v. Heffernan*, 607 F.Supp.2d 403 (E.D.N.Y.2009) ......................................................... 15

*Levinson v. Spector Motor Service,* 330 U.S. 649, 67 S.Ct. 931 (1947) .................................. 7, 11

*Ling Nan Zheng v. Liberty Apparel Co*., Inc., 556 F.Supp.2d 284 (S.D.N.Y. 2008) ................... 18

*Lopez v. Silverman*, 14 F.Supp.2d 405 (S.D.N.Y. 1998) ............................................................. 21

*Martin v. Coyne Int'l Enters., Corp.*, 966 F.2d 61 (2d Cir. 1992) ................................................. 7

*Patel v. Wargo*, 803 F.2d 632(11th Cir. 1986) ........................................................................... 18

*Samborski v. Linear Abatement Corp*., 1999 U.S. Dist. LEXIS 14571 (S.D.N.Y. 1999) ............ 21

*Saunders v. Ace Mortg. Funding, Inc.*, No. CIV. 05-1437DWFSRN, 2007 WL 4165294, at *5
 (D. Minn. Nov. 16, 2007) ............................................................................................ 20

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321(S.D.N.Y. 2010); ........................................................ 15

*Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 WL 3153150 (W.D.N.Y Sept. 30, 2009).......... 18,19

*Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, No. 12 Civ. 5008 (MKB), 2015 U.S. Dist. LEXIS

    10415, 2015 WL 363871, at *13 (E.D.N.Y. Jan. 29, 2015) .................................... 15

*Wirtz v. Pure Ice Co.,* 322 F.2d 259 (8th Cir. 1963).................................................... 19

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir.2003).......................................... 15,18

## STATUTES

12 N.Y.C.R.R. § 142-2.2 ............................................................................................ 8

26 CFR §782.4(a)...................................................................................................... 12

26 CFR §782.4(b) ..................................................................................................... 11

*29 C.F.R. § 782.2(a)* ................................................................................................ 6

*29 U.S.C.A.§ 213(b)* ............................................................................................... 6

49 U.S.C. § 13501(1)(A)........................................................................................... 14

*49 U.S.C.A § 31502(b)(1)* ...................................................................................... 6

49 U.S.C.A. §13102 (14) .......................................................................................... 8

49 U.S.C.A. §13102 (16) .......................................................................................... 8

49 U.S.C.A. 13102(3) ............................................................................................... 10

49 USCS §13102 ...................................................................................................... 10

*Fed. R. Civ. P. 56(c)* .............................................................................................. 5

FLSA §13(b)(1) ................................................................................................... 11, 12

NYLL § 190(3). ................................................................................................................ 15

## I.   <u>PRELIMINARY STATEMENT</u>

Defendants CK TOURS, INC d/b/a CK TOURS; d/b/a DA XING TOURS; WIN LI TOURS, INC d/b/a WIN LI TOUR; d/b/a HENG XING TOUR; SKYLINER TRAVEL & TOUR BUS CORP d/b/a SKYLINER TRAVEL; HYON-SAK KIM a/k/a PETER KIM, and JOANNA LAU a/k/a KIN-CHING LAU, (collectively "Defendants") submit this memorandum of law in support of their motion for partial summary judgment dismissing the complaint of Plaintiffs XUGUANG CHANG, JUN NING, HAITAO WANG a/k/a LEO WANG, and CHUAN HUI WANG (collectively "Plaintiffs") with regard to Plaintiffs' overtime claims and all claims against the Corporate Defendant, SKYLINER TRAVEL & TOUR BUS CORP d/b/a SKYLINER TRAVEL ("Skyliner")   and the Individual Defendant HYON-SAK KIM a/k/a PETER KIM ("Peter Kim")

In the Complaint, Plaintiffs claim that Defendants' failure to pay them overtime violates the Fair Labor Standard Act (FLSA) and New York Labor Law (NYLL). Plaintiffs' claim is subject to dismissal because the undisputed facts established that Plaintiffs were not entitled to overtime pay due to the "motor carrier" exemption and Defendants Skyliner and Peter Kim were not their employers.

There is no genuine dispute about the facts material to Defendants' defense to Plaintiffs' overtime claims and identity of their employer(s). The only question is whether these undisputed facts establish any violation of law. Based on the undisputed facts, and for the reasons set forth below, Defendants respectfully submit that they are entitled to partial judgment as a matter of law on their defense to Plaintiffs' claims.

## II.   <u>STATEMENT OF FACTS</u>

1

CK TOURS, INC d/b/a CK TOURS d/b/a DA XING TOURS ("CK Tours") and WIN LI TOURS, INC d/b/a WIN LI TOUR d/b/a HENG XING TOUR ("Win Li Tours") are/were business entities incorporated and located in New York. (Exhibit A – NYS Records). CK Tours and Win Li Tours engage in the business of a tour operator including but not limited to providing transportation, hiring bus operators and attendants for their tourist passengers ("passenger" or "Casino patrons") to visit Foxwood Casino ("Foxwood" or the "Casino") located in Connecticut. (Lau Decl. ¶¶4,5; Rule 56.1 Statement ¶1). CK Tour provides the transportation services to the Casino's patron(s) in Chinatown, in New York City and Win Li Tours served the Casino patrons in the Flushing-Elmhurst area in Queens, New York. (Lau Decl. ¶¶5,6; Rule 56.1 Statement ¶2. Win Li Tours stopped its operation in March 5, 2016 when the Casino ceased to provide transportation for the patrons in Chinatown in New York City. (Lau Decl. ¶12; Rule 56.1 Statement ¶3).

JOANNA LAU a/k/a KIN-CHING LAU ("Joanna Lau") is the only manager of CK Tours and Win Li Tour since the formation of the corporations in 2013. (Lau Decl. ¶3; Rule 56.1 Statement ¶4). Joanna Lau had/has been solely participating in the operation and management of CK Tours and Win Li Tours (until Win Li Tours stopped its operation) and made/make all the managerial decisions such as hiring/firing or setting employees' rate of pay or work schedule for both of the corporations. (Lau Decl. ¶¶15,16; Rule 56.1 Statement ¶5). Joanna Lau, on behalf of CK Tours and Win Li Tours, hired Plaintiffs XUGUANG CHANG, JUN NING, HAITAO WANG a/k/a LEO WANG, and CHUAN HUI WANG ) ("Plaintiffs") as bus attendants to foster the safety and comfort of the Casinos' tourist patrons while they were escorted to the destination on the bus. (Lau Decl. ¶¶5,6,7; Rule 56.1 Statement ¶6).

SKYLINER TRAVEL & TOUR BUS CORP d/b/a SKYLINER TRAVEL ("Skyliner") is a bus company incorporated in New York and solely owned and operated by HYON-SAK KIM

2

a/k/a Peter Kim ("Peter Kim"). (Exhibit A-NYS Records; Kim Decl. ¶3; Rule 56.1 Statement ¶7). Skyliner engages in the business of supplying buses and drivers to travel agencies and other business entities such as casinos. In 2013, after Skyliner won a blind bid put out by Foxwoods Casino, Skyliner has been supplying its buses and drivers to provide transportation for the tourist patrons of the Casino. (Kim Decl. ¶¶4,8; Rule 56.1 Statement ¶8). CK Tours and Win Li Tours had/has been utilizing Skyliner's buses and drivers to provide transportation and tour operation services to the Casino's patrons. (Kim Decl. ¶¶8,12; Lau Decl. ¶10; Rule 56.1 Statement ¶9). Skyliner is an independent and separate business entity from CK Tours and Win Li Tours. (Kim Decl. ¶7; Rule 56.1 Statement ¶10).  Skyliner's employees only consist of bus drivers, mechanics, officer clerks, and management personnel and does not have any bus attendant employees.  (Kim Decl. ¶¶5,8; Rule 56.1 Statement ¶11).

CK Tours and Win Li Tours, as tour operators, arrange transportation such as buses and drivers and provide a bus attendant on each bus. (Kim Decl. ¶¶8; Lau Decl. ¶7; Rule 56.1 Statement ¶12). Plaintiffs were hired by CK Tours and/or Win Li Tours as a "Casino Bus Host(ess), aka Casino Bus Escort, aka Casino Bus Matron (Exhibit C – CK Tour Employee Info; Exhibit B: Depo.Trans. of Xuguang Chang: 19:3-5; 84:21; Lau Decl. ¶13; Rule 56.1 Statement ¶13). As a sole operator of CK Tours and Win Li Tours, Joanna Lau set Plaintiffs' work schedules and rate of pay. (Exhibit D- Nos. 2,3 of Plaintiffs' Responses to Defendants' Interrogatories; Exhibit B: Depo.Trans. of Xuguang Chang: 19:3-4; 52:20; 59:18; 59:22; Lau Decl. ¶¶15,16; Rule 56.1 Statement ¶14). Plaintiffs, as the bus attendants, were responsible for selling the bus tickets to passengers prior to boarding, collecting the tickets, assisting passengers to get in and out of the bus in an orderly fashion, and providing safety instructions to the passengers to foster the safety of the passenger and drivers on the bus. (Lau Decl. ¶¶7,8; Exhibit B: Depo.Trans. of Xuguang

Chang: 19:8-12, 19-21; 21:13-21; Rule 56.1 Statement ¶15). Plaintiffs were required to ride on the bus with passengers for the entire two way round-trip, from their pick up location to the destination and from the destination to the drop-off location, provide general rules and information about the Casino to the Casino patrons, and report the number of buses and passengers to the Casino while the attendant was riding with their passengers on the bus. (Lau Decl. ¶¶7,8; Exhibit B: Depo.Trans. of Xuguang Chang: 20:22-25; Rule 56.1 Statement ¶16).

Plaintiffs, former Casino Bus Host(ess), aka Casino Bus Escort, aka Casino Bus Matron for CK Tours and/or Win Li Tours, alleged, inter alia, minimum wage and overtime claims under both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") CK Tours, Win Li Tours, and Joanna Law as well as Skyliner and its sole owner, Peter Kim, purportedly as their employers. Specifically, Plaintiffs brought the lawsuit against Skyliner and Peter Kim under the theory of joint employment because Peter Kim "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records" at CK Tours, and Win Li Tours. (See Complaint ECF No. 1 ¶¶21, 24). When Joanna Lau had invited her acquaintance, Peter Kim, to the Chinese Lunar New Year parties along with her employees, Plaintiffs saw Peter Kim at approximately two of the annual parties.  (Lau Decl. ¶21; Kim Decl. ¶14).  Plaintiff Xuguang Chang alleged that he considers Peter Kim as their boss because "he always shows up at major events. Such as the yearly meeting of the company […] and treated everybody to a meal as I thank you kind of thing" but Peter Kim "did not hire" the Plaintiff nor did he have any "in-person discussion with him."  (Exhibit B: Depo.Trans. of Xuguang Chang: 26:17-18; 130:18-23; 131:4-7).

Furthermore, the record shows that CK Tours and Win Li Tours have no relationship with Skyliner, a bus company, which has no involvement in the management and/or operation of Win Li Tours or CK Tours. (Lau Decl. ¶¶13,14; Kim Decl. ¶¶ 7,8,9,10; Rule 56.1 Statement ¶17). Skyliner has its own books, maintains its own records and bank account(s), and manages its finances and employees independently. (Lau Decl. ¶13; Kim Decl. ¶10; Rule 56.1 Statement ¶18). Plaintiffs were hired by CK Tours and/or Win Li Tours as their Casino bus attendants and Joanna Lau determined Plaintiffs' work schedules and rate of pay. (Ex. C – CK Tour Employee Info; Exhibit D- Nos. 2,3 of Plaintiffs' Responses to Defendants' Interrogatories; Exhibit B - Depo.Trans. of Xuguang Chang: 19:3-5; 84:21; Lau Decl. ¶17; Rule 56.1 Statement ¶19). The only connection between CK Tours, Win Li Tours, and Skyliner is serving the Foxwoods Casinos' patrons such as CK Tours and Win Li Tours provided transportation and bus attendant services for the Casinos' patrons while Skyliner supplied buses and drivers to the Casino to attract the patrons who reside in New York to visit the Casino located in Connecticut. (Lau Decl. ¶¶5,10; Kim Decl. ¶¶4, 12; Rule 56.1 Statement ¶20).

## III.   ARGUMENT

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment may only be granted when the movant carries its burden of demonstrating there is no genuine issue of material fact for trial, and that it is entitled to judgment as a matter of law. *See Fed. R. Civ. P. 56(c); See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986)*; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986). Once a motion for summary judgment is properly presented with affidavits or other supporting evidence, the burden shifts to the non-moving party to show that there are "genuine unresolved issues of material fact to be tried." *Gibson v. American Broadcasting Companies, Inc.*,

892 F.2d 1128 (2d Cir. 1989). Under the summary judgment rule, "the non-moving party may not rest upon the mere allegations or denials of the . . . pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 2510. Absent such evidence, there exists no triable issue of fact and the movant is entitled to summary judgment as a matter of law. *Id.*

As set forth more fully below, Defendants contend that Plaintiffs are not entitled to overtime as they qualify for the FLSA's motor carrier exemption. Defendants further contend that Plaintiffs' claims alleging Defendants Skyliner and the sole owner of Skyliner, Peter Kim, should be dismissed as Plaintiffs were not employees of the Defendants and there is no material issue of fact exists to preclude the Defendants from establishing entitlement to judgment as a matter of law.

## B. PLAINTIFFS' FEDERAL CLAIMS UNDER FLSA SHOULD BE DISMISSED BECAUSE THEY ARE EXEMPT EMPLOYEES UNDER THE MOTOR CARRIER ACT

### 1. The Motor Carrier Act Has the "Power To" Establish the Maximum Hours of Service of Motor-Carrier Employers' Employees.

The Motor Carrier Act provides that the Secretary of Transportation may regulate the "qualifications and maximum hours of service of employees...of a motor carrier." *49 U.S.C.A § 31502(b)(1)*. The FLSA's overtime provisions do not apply to "any employee with respect to whom the Secretary of Transportation has *power to* establish qualifications and maximum hours of service pursuant to the provisions of 49 U.S.C.A. § 31502." *29 U.S.C.A.§ 213(b)*.

According to the status, it merely requires the Secretary of Transportation's ability to establish the qualifications and maximum hours over the employees as long as they are (1) are employed by carriers and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. *See, 29 C.F.R. § 782.2(a)*. However, it is well established that

6

the exemption still applies even if the Secretary of Transportation does not exercise the power. "Courts have consistently held that the § 213(b)(1) exemption to § 207 [of the FLSA] applies *regardless* of whether the Secretary of Transportation has exercised his authority to regulate a particular employee or employer." *Bilyou v. Dutchess Beer Distributors, Inc.,* 300 F.3d 217, 222 fn. 2 (2d Cir. 2002); See, *Levinson v. Spector Motor Service,* 330 U.S. 649, 67 S.Ct. 931 (1947) (holding, "the Commission's mere possession of that power, whether exercised or not, necessarily excluded all employees, with respect to whom the power existed, from the benefits of the compulsory overtime provisions" of the FLSA.") that the existence of power is enough as long as the employees are engaged in activities affecting safety of operation of interstate motor carriers); *Martin v. Coyne Int'l Enters., Corp.*, 966 F.2d 61 (2d Cir. 1992) (holding that the department's failure to regulate particular drivers does not mean that it lacks the power to do so); *See also,* 48 Am. Jur. 2d Labor and Labor Relations § 4125 (1994), Overtime Pay Exemption Under the FLSA ("It is not necessary for an employer to apply for or obtain a certificate of exemption from the DOT Secretary in order to be entitled to the FLSA exemption. If the DOT Secretary has control over the motor carrier's operations, its employees are within the exemption regardless of the fact that the carrier is not exercising its permit to carry on interstate operations.") (citations omitted).

    The Secretary of Transportation has power to exercise its power over a motor carrier as long as a motor carrier or its employees exercise daily control over drivers and, in the case of a for-hire motor carriers, solicit customers.[1] Here, it is undisputed that Plaintiffs were hired by Defendants as bus attendants, (i.g., "Casino Bus Host(ess), aka Casino Bus Escort, aka

---

[1] Federal Motor Carrier Safety Administration: https://www.fmcsa.dot.gov/regulations/corporation-parent-corporation-owns-subsidiary-corporations-are-hire-motor-carriers. (last visited 6.4.20)

7

Casino Bus Matron"), and solicited their customers by selling the tickets to visit the Casino. (Exhibit C – CK Tour Employee Info; Exhibit B: Depo.Trans. of Xuguang Chang: 19:3-21;21:13-21; 84:21; Lau Decl. ¶¶7,8,15,16,17).

Just like its federal counterpart, the NYLL clearly states that for employees who are exempt from the FLSA under the Motor Carrier Exemption, employers must provide overtime compensation at a rate of one and one-half times the minimum wage._*Hayward v. IBI Armored Servs.*, 954 F.3d 573, 576 (2d Cir. 2020) (holding that the district court erred in dismissing Plaintiffs' NYLL claims for overtime compensation on the basis that the NYLL precludes FLSA-exempt employees from receiving overtime compensation). New York State wage and hour law parallels with the FLSA overtime provisions as it also requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of . . . the [FLSA], as amended[.]" 12 N.Y.C.R.R. § 142-2.2.

Because the NYLL's overtime provisions "*expressly incorporate the FLSA's exemptions*," Plaintiffs' NYLL overtime claim will not succeed against Defendants as matter of law. See *Fox v. Commonwealth Worldwide Chauffeured Transp.* NY, 865 F. Supp. 2d 257, 268 (E.D.N.Y. 2012) (Garaufis, J.), citing 12 N.Y.C.R.R. § 142-2.2.

   a. *SYKLINER, CK Tours and/or Win Li Tours are "Motor Carriers" as They Are in the Business of Providing transportation for Compensation*

The term "*motor carrier*" is defined in 49 U.S.C.A. §13102 as "a person providing motor vehicle transportation for compensation." 49 U.S.C.A. §13102 (14)*; See, Fox v. Commonwealth Worldwide Chauffeured Trans. of NY, LLC,* 865 F. Supp. 2d 257, 263-267 (E.D.N.Y. 2012). The statute defines "motor vehicle" as "a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation." 49 U.S.C.A. §13102 (16).

8

Pursuant to the statue, the term "*transportation*" includes, "[…] a motor vehicle […] of any kind related to the movement of passengers […] *regardless of ownership and an agreement concerning use*; and […] *services related to that movement*, including arranging for […] delivery […] transfer in transit […] and interchange of passengers and property." 49 U.S.C.A. §13102 (23). *See also, Gloucester Ferry Co. v. Pennsylvania,* 114 U.S. 196, 5 S. Ct. 826, 29 L. Ed. 158 (1885) (holding that business of receiving and landing passengers and freight is incident to their transportation).

It is undisputed that the Sykliner engages in the business of supplying buses and drivers. (Rule 56.1 ¶¶ 8). Therefore, Sykliner is a motor carrier under the Act.

It is also undisputed that Defendants CK Tours and Win Li Tours provided transportation by arranging tour buses, drivers, and supplying bus attendants to their passenger tourists for compensation by selling tickets. The buses were driven on the highways in interstate commerce between the pick-up location(s) in New York and Foxwoods Casino located in Connecticut to provide transportation for the tourist passengers along with the bus attendant tour guides.  The undisputed evidence establishes that CK Tours and Win Li Tours are in fact motor carriers as they were/are in the business of providing transportation in exchange for money received by selling the bus tickets paid by their tourist passengers. (Lau Decl. ¶¶5,6).

Accordingly, Defendants Skyliner, CK Tours, Win Li Tours are clearly motor carriers within the definition of the Motor Carrier Act.

b. *CK Tours and Win Li Tours Are Not Required to Have the Ownership of the Motor Vehicle as They Provide "Transportation" as well as "Services in Connection with" Transportation for the Passenger Casino Patrons*

The power of the Interstate Commerce Commission to establish maximum hours of service pursuant to the provisions of § 204 of the Motor Carrier Act (Part II of the Interstate Commerce Act) is limited to employees of "Carriers." *Boutell v. Walling*, 327 U.S. 463, 66 S. Ct. 631 (1946). Pursuant to." 49 U.S.C.A. 13102(3), "[t]he term "carrier" means a motor carrier, a water carrier,

and a freight forwarder." 49 U.S.C.A. 13102(3). To be "carrier" within the former 49 USCS §§ 301–305, 306–327, it was also *not necessary that the transportation company actually own its own vehicles. Id.; See, also, Calvin v. United States,* 44 F. Supp. 684 (D. Mo. 1942).

"Where motor carrier used vehicles it did not own with or without services of owner or his representative, Interstate Commerce Commission [now Surface Transportation Board] must determine who is, in legal contemplation […]" and "question cannot be decided by existence of any single factor such as names used on bills of lading or displayed on vehicle, method of payment for services performed, or terms of agreement between parties […]" but instead, the […] answer depended on full consideration of all conditions connected with transportation service. *See,* 49 USCS §13102 *citing Auclair v. United States, 72* F. Supp. 160 (D. Mass. 1947). Under 49 USCS §13102, the term "transportation" includes wide range of "*services in connection with*" *transportation* as "[C]ongress recognized that duty of carriers to public included performance of variety of services which […] should be included together under single term 'transportation.'" 49 USCS §13102 *citing Cleveland, C., C. & St. L. R. Co. v. Dettlebach,* 239 U.S. 588, 36 S.Ct. 177, 60 L. Ed. 453 (1916). The status specifically defines the service which constitutes the term, "transportation" as "[b]ussiness of receiving and landing of passengers and freight is incident to their transportation. 49 USCS §13102 *citing, Gloucester Ferry Co. v. Pennsylvania,* 114 U.S. 196, 5 S. Ct. 826, 29 L. Ed. 158 (1885).

Here, CK Tours and Win Li Tours provide transportation for their passenger tourists by arranging the bus to transport the passengers to the Casino. CK Tours and Win Li Tours arranged the bus in advance to be operated on a regular route between the pick-up location(s) in New York and Foxwood Casino located in Connecticut.  (Lau Decl. ¶¶5,6; Exhibit B: Depo.Trans. of Xuguang Chang 19:8-12, 19-21; 21:13-21). The certificate(s) of information of the corporation

specifies that "the purpose of the corporation is to engage in the business of a tour operator, including but not limited to …hiring bus operator…and activities related to the travel business." (Exhibit A-NYS Records). The conclusion that CK Tours and Win Li Tours are a Motor Carrier is further evidenced by the fact that, they did not only provide transportation, but they also supplied the bus attendants to assist the passengers with boarding and landing of the bus. (Lau Decl. ¶5; Exhibit B: Depo.Trans. of Xuguang Chang 19:19-21, 21:13-17)

2. **Plaintiffs Had the Duty of Performing the "Safety-Affecting Activities on Motor Vehicles" as Attendants on the Motor Vehicle**

   Pursuant to the Motor Carrier Exemption under the Fair Labor Standard Act, "[t]he employee's duties must include the performance, either regularly or from time to time, of safety-affecting activities on a motor vehicle used in transportation on public highways in interstate or foreign commerce. Employees must perform such duties as a driver, driver's helper, loader, or mechanic. Employees performing such duties meet the duties requirement of the exemption regardless of the proportion of "safety affecting activities" performed [… .]." FLSA §13(b)(1).

   Under the statute 26 CFR §782.4, an employee is considered as *a driver's "helper"* even though the employee's safety-affecting activities constitute but a minor part of his job.  26 CFR §782.4(b).The statute defines conductorettes on buses as driver's "helpers" within the meaning of the Motor Carrier Act because their "*primary duties are to see to the comfort of the passengers are classified as 'helpers' whose such buses are being operated in interstate or foreign commerce*, because in instances when accidents occur, they help the driver in obtaining aid and protect the vehicle from oncoming traffic." *Id*. *See also, Levinson v. Spector Motor Serv., 330* U.S. 649, 67 S. Ct. 931 (1947) (recognizing, "an employee who is engaged in a class of work that affects safety of operation is not necessarily engaged during every hour or every day in activities that directly affect

11

safety of operation" as long as the employee engages in the safety affecting activities during the particular moment.).

Plaintiffs ware employed as "Casino Bus Host(ess) a/k/a Casino Bus Escort a/k/a Casino Bus Matron." (Exhibit C - pg. 5) Plaintiffs were required to work a split shift with responsibilities which, included assisting the passenger Casino patrons with the orderly boarding of the bus. Furthermore, to promote the safety of the vehicle and the passengers, Plaintiffs contacted the Casino to report the number of the bus(es) and identified the line of the bus(es) before the bus arrives at the destination so that the driver can safely transport the passengers to the Casino. (Exhibit B: Depo. Trans. of Xuguang Chang 20:23-25; Lau Decl. ¶¶7,8)

Accordingly, as Plaintiffs' duties of performing safety-affecting actives on a motor vehicle while working for CK Tours and Win Li Tours are clearly established, the Motor Carrier Exception under FLSA applies.

a. *Plaintiffs Worked "Directly on" the Bus(es) Used in Transportation of the Passengers as Driver's Helpers*

The Section 13(b)(1) overtime exemption only applies to "drivers, drivers' helpers, loaders who are responsible for proper loading, and mechanics working directly on motor vehicles that are to be used in transportation of passengers or property in interstate commerce" FLSA §13(b)(1). Pursuant to 26 CFR §782.4, "[a] Driver's "helper," as defined for Motor Carrier Act jurisdiction [...]is an employee other than a driver, who is required to ride on a motor vehicle when it is being operated in interstate or foreign commerce within the meaning of the Motor Carrier Act.  26 CFR §782.4(a).

According to CK Tours Job Specification, it explicitly provides that its Casino bus attendants are "required to board a coach bus and escort passenger to and from Casino." (Exhibit

C). It requires the bus attendants to assist the passengers with "*the orderly boarding of the coach vehicle*" before the departure and "*assist in the comfort of the passengers*" on the bus during the trip to the Casino. (Id.)

Defendant Chang further confirmed that he was required to ride on the bus when transporting the passengers to the Casino. A part of Defendant Xuguang Changes' deposition transcript is provided as follows:

Q.   What was your position with CK [Tours]?

A.   […] wither a Tour Guide or Tour Escort. I supposed they call it different, but I suppose an [tour] escort.
     […]

Q.   Explain to us what did you do exactly as a Tour Guide or Escort at CK [Tours]?

A.   Okay, so the main job is to sell tickets ahead of time. And, then, take the customer to the Casino […] They [customers] *have to listen to me* getting off the bus. *But once they are inside the Casino, they are free do to whatever.* (Exhibit B: Depo. Trans. of Xuguang Chang 19: 2-21)

     […]

A.   And, when it [the bus] arrives at Station 7 and Station 8 […] *I help out one-by-one when they got off*. So that is why I said they *have to listen to me*. I have to help out in terms of telling the exactly what number they are and where they are going to be. *After that, they are free to go to entertain themselves*. (Exhibit B: Depo. Trans. of Xuguang Chang 21:9-18).

As such, establishing fact that Plaintiffs worked and/or were required to work directly on the buses should be an issue in this case as the Plaintiff acknowledges such requirement and it has clearly established.

   b.   *Plaintiffs' Engagement in Interstate Commerce*

Pursuant to 49 U.S.C. § 31502(a), the Secretary of Transportation's jurisdiction under the Motor Carrier Safety Act is applicable to transportation of passengers by a motor carrier

13

"between a place in a State and a place in another State." 49 U.S.C. § 13501(1)(A). *See also,*
*Dauphin v. Chestnut Ridge Transportation, Inc.,* 544 F. Supp. 2d 266, 274-275 (S.D.N.Y. 2008)
(Holding that where interstate travel constitutes a "natural, integral and ... inseparable part of the
employees' duties, such that any employee is likely to be called on to perform interstate travel," the
employees are all subject to the motor carrier exemption regardless of the number of hours they
individually devote to interstate travel).

It is undisputed that the Plaintiffs consistently traveled between states for escorting their
customers from the pick-up location(s) in Flushing and/or Chinatown in New York to the Casino
located in Connecticut and from the Casino to the drop-off location in New York. (Lau Decl. ¶¶
5,6; Chang Tr.52:21-25; 81:12;82:21-22; Exhibit E: CK Tours Bus Schedules).

In conclusion, the undisputed facts establish that Plaintiffs were employed by a motor carrier,
and that their duties affected the safety of operation of the bus in interstate commerce, as they
assisted the passengers in providing comfort, while they are in the bus and assisting the driver in
obtaining the information where to safely drive the bus to prior to arriving at the Casino.
Accordingly, by virtue of the  motor carrier exemption, Plaintiffs were not legally entitled to
overtime pay.

### C.   THE CLAIMS AGAINST CORPORATE DEFENDANT SKYLINER AND INDIVIDUAL DEFENDANT PETER KIM SHOULD BE DISMISSED BECAUSE THEY ARE NOT EMPLOYERS OF PLAINTIFF

Plaintiffs contend that Corporate Defendant Skyliner Travel & Tour Bus Corp d/b/a
Skyliner Travel  ("Skyliner") and Individual Defendant Hyon-Sak Kim a/k/a Peter Kim, the CEO
of the Skyliner are "jointly liable with other Defendants, Win Li Tours, CK Tours and Joanna
Lau. (Complaint ECF. No. 1 ¶23)

Both FLSA and NYLL share the same definition of "employer." "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); *see Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010); *Jiao v. Shi Ya Chen*, No. 03 Civ. 165 (DF), 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007). While "the New York Court of Appeals has not yet resolved whether the NYLL's standard for employer status is coextensive with the FLSA's ... there is no case law to the contrary." *Wang v. LW Rest., Inc*., 81 F. Supp. 3d 241, No. 12 Civ. 5008 (MKB), 2015 U.S. Dist. LEXIS 10415, 2015 WL 363871, at *13 (E.D.N.Y. Jan. 29, 2015) (citation omitted).

In order to be jointly and severally liable, the Individual Defendants must be "employers" within the meaning of the New York Labor Law and the FLSA. NYLL's broad definition of an employer includes "any person ... employing any individual in any occupation, industry, trade, business or service or any individual ... acting as employer." *Irizarry v. Catsimatidis*, 722 F.3d 99, 118 (2d Cir.2013) (citing NYLL § 190(3)). Courts in this Circuit look to a four-factor "economic reality" test to determine whether this definition has been met: namely whether the alleged employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records." *Lauria v. Heffernan*, 607 F.Supp.2d 403, 409 (E.D.N.Y.2009); *see also Karic v. Major Auto. Cos.*, 992 F.Supp.2d 196, 203 (E.D.N.Y.2014); *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984). "These factors are not exclusive, and the plaintiff need not satisfy all of them to demonstrate that a particular defendant is an employer." *Kim v. Kum Gang, Inc.*, 12 Civ. 6344(MHD), 2015 WL 2222438 at *39 (S.D.N.Y. Mar. 19, 2015) (Dolinger, M.J.), citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir.2003).

1. **Skyliner and Peter Kim Are Not Employers under the Economic Realities Test**

Here, while it is undisputed that Defendants CK Tours, Win Li Tours, and Joanna Lau, as a sole operator of the corporate defendants, constitute employers, none of Skyliner and Peter Kim is an "employer" under the test. Neither Skyliner or Peter had the power to hire or fire employees of CK Tours and Win Li Tours. (Lau Decl. ¶¶15,16; Kim Decl. ¶¶8,9). None of Defendants Skyliner and Peter Kim supervised or controlled employee work schedule or conditions of employment. (Lau Decl. ¶¶15,16,19; Kim Decl. ¶¶8,9,10,16). Nor were they responsible for determining the rate and method of payment for the employees. (Supra.) In fact, all of the Plaintiffs were employed by CK Tours and/or Win Li Tours. In fact, all of Plaintiffs were hired by CK Tours and/or Win Li Tours as their Casino bus attendants and Joanna Lau determined Plaintiffs' work schedules and rate of pay. (Exhibit C – CK Tour Employee Info; Exhibit D- Nos. 2,3 of Plaintiffs' Responses to Defendants' Interrogatories; Exhibit B: Depo.Trans. of Xuguang Chang: 19:3-5; 84:21). It was Joanna Lau who operates CK Tours and Win Li Tours are responsible for all payroll and business records.  (Lau Decl ¶¶15,16,18)

Peter Kim operates an independent bus company under the name Skyliner that supplied buses and drivers to Foxwoods Resort Casinos after winning a blind bid in 2013. (Kim Decl. ¶ 6). Since 2013, Peter Kim supplies transportation to the Casino and acted as a "supplier" of the buses and drivers through Skyliner to serve the Casino's patrons commuting from New York. (Supra.). However, neither Skyliner and Peter Kim were involved in CK Tours and/or Win Li Tours' operations nor did they share employees of CK Tours and/or Win Li Tours. (Lau Decl. ¶¶14,15,16,19; Kim Decl. ¶¶8,9,10,11).

As stated above, Defendants Skyliner and Peter Kim do not meet the economic reality test and to not meet the economic reality test and do not qualify as joint employers with other

Defendants under both federal and state statutes. Plaintiffs' inclusion of the Defendants Skyliner and Peter Kim is erroneous, perhaps Plaintiffs' misconceptions might have been stemmed from the fact that Skyliner and CK Tours and Win Li Tours served the Casino's patrons and the fact that Peter Kim is the owner of the Skyliner and Plaintiffs worked in the Skyliner's buses and assisted Skyliner's drivers while escorting the Casino patrons in the bus. (Lau Decl. ¶¶5,7,8,10; Kim Decl. ¶¶4,8,12,13).

2. **Skyliner and Peter Kim Did Not Have Operational Control of CK Tours and Win Li Tours.**

In addition to the "economic reality" multi-factor test, courts in this Circuit also consider operation control as a relevant factor. *See Irizarry* 722 F.3d at 106-07. "When it comes to 'employer' status under the FLSA, control is key." *Fermin v. Las Delicias Peruanas Rest.*, *Inc.*, 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015) (citation omitted). Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer" status. Instead, to be an "employer," an individual defendant must possess control over a company's actual "operations" in a manner that relates to a plaintiff's employment. *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment. *Id.*

To establish personal liability against the individual defendants, officers who are non-owners (only John Chen, the sole owner, operator, and manager of the corporate defendant), plaintiffs must establish that the individuals qualify as "employers" under the FSLA under a totality of the circumstances using the "economic realities test." *See, e.g. Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Courts consider several factors to determine whether or

17

not an individual may be held individually liable as an employer under the FLSA. No one factor is dispositive; rather, the court must "transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case*." Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 195 (5th Cir. 1983); *Herman*, 172 F.3d at 139; *Ansoumana v. Gristede's Operating Corp*., 255 F.Supp.2d 184, 193 (S.D.N.Y. 2003). Of particular significance is whether the individual takes an active role in the operation of the company. *Id.* at 139-40; *Ling Nan Zheng v. Liberty Apparel Co*., Inc., 556 F.Supp.2d 284, 298 (S.D.N.Y. 2008). The Supreme Court and Second Circuit have both found individual employer status where the defendant exercised substantial control of the terms and conditions of the employees' work. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). The question is whether the individual exercises control over significant aspects of the corporation's day-to-day functions. *Herman*, 172 F.3d at 139-40.

Generally, to be personally liable, officers must have exercised direct operational control over the employees, "such as personally supervising the employee's work, including determining the employee's day-to-day work schedule or tasks, signing the employee's paycheck or directly hiring the employee." *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 WL 3153150 at *4 (W.D.N.Y Sept. 30, 2009) (citing cases). "At bottom, [the] economic reality analysis focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998).

The theoretical ability to exercise such control is not sufficient; to be personally liable the proof must establish that the defendant actually exercised such control. *Tracy* at 2009 WL 3153150 *5. "[U]nexercised authority is insufficient to establish liability as an employer." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1161 (11th Cir. 2008); *see also Patel v. Wargo*,

803 F.2d 632, 638 (11th Cir. 1986) (finding that, although corporation's president "might have played a greater role" he was not personally liable because he "did not have operational control of significant aspects of [the corporation's] day-to-day functions, including compensation of employees or other matters 'in relation to employee.'"); *Wirtz v. Pure Ice Co.,* 322 F.2d 259, 262 (8th Cir. 1963) (finding that corporation's president was not an "employer" under FLSA where he "had nothing to do with the hiring of the employees or fixing their wages or hours," and the fact that he had the authority to do so is "beside the point as long as he did not do so."). "The fact that high-level officers and board members may know [of [*14] potential FLSA violations] does not lead to the logical inference that they had operational control over that group of employees." *Tracy*, 2009 WL 3153150 *6. The fundamental question in FLSA cases is whether the individual defendant "had control over the alleged violation of the Act." *Dole v. Simpson*, 784 F. Supp. 538, 545 (S. D. Ind. 1991).

In this case, it is undeniable that neither Skyliner nor Peter Kim exercised any control over Plaintiffs. Applying the factors set forth above, it is clear that Skyliner and Peter Kim are an "employer" under FLSA or NYLL. While Joanna Lau is the sole manager and/or operator of the travel agencies, CK Tours and Win Li Tours, neither Skyliner nor Peter Kim exercise any operational control over CK Tours and Win Li Tours' employees and are not responsible for the employees hiring, termination, setting pay rate, assignment to sites, setting work schedules, preparing and issuing pay checks, and maintaining employment records. (Lau Decl. ¶¶13,14,15,16,22; Kim Decl. ¶¶7,10,11,15,16). Instead, it was Joanna Lau alone who exercised operational control of CK Tours and Win Li Tours where Plaintiffs were hired to work as bus attendants aka, "Casino Bus Host(ess), aka Casino Bus Escort, aka Casino Bus Matron (Exhibit C

– CK Tour Employee Info; Exhibit B: Depo.Trans. of Xuguang Chang: 19:3-5; 84:21; Lau Decl. ¶¶15,16,17).

Granted, regardless of the degree of control one asserts over a company, employer liability will attach to individuals if they had control over the alleged violation of the FLSA. *See Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 34 (1st Cir. 2007) (holding president of corporation personally liable because "He was thus instrumental in 'causing' the corporation to violate the FLSA."). In contrast, Skyliner and Peter Kim were not responsible for Plaintiffs' compensation plans or work schedules and thus have nothing to do with the alleged violations. Decisions affecting Plaintiffs' compensation and work schedules at CK Tours and Win Li Tours were made by the sole manager and/or operator of the corporation, Joanna Lau, who alone is responsible.

3. **Skyline and Peter Kim Are Not Employers Because They Did Not Exert Any Financial Control Over CK Tours and Win Li Tours**

Personal liability under FLSA may arise from a significant ownership interest in the corporation coupled with operational control of significant aspects of the corporation's day-to-day functions. *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 966 (6th Cir. 1991); *see e.g., Herman*, 172 F.3d at 140 (individual defendant controlled the company financially); *Saunders v. Ace Mortg. Funding, Inc.*, No. CIV. 05-1437DWFSRN, 2007 WL 4165294, at *5 (D. Minn. Nov. 16, 2007) (corporate executives with 20% ownership interest individually liable); *Dole v. Simpson*, 784 F. Supp. 538, 546 (S.D. Ind. 1991) (individual defendant had "near complete financial control"); *Elliot Travel*, 942 F.2d at 966 (chief corporate officer and majority owner "controlled the purse strings"); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (owner of corporations "held their purse-strings and guided their policies"). Moreover, financial control becomes almost conclusive when it involves keeping a business operating. *Simpson*, 784 F.Supp. at 545-46.

Courts have found that the FLSA definition of "employer" includes individual principals of corporate employers. *RSR Security Servs.*, 172 F.3d at 139-40 (chairman who was 50% owner of corporate defendant, who had the power to hire and fire, was individually liable for overtime violations). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liability under the FLSA for unpaid wages." *Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (citing cases)). *See also Samborski v. Linear Abatement Corp.*, 1999 U.S. Dist. LEXIS 14571 (S.D.N.Y. 1999) (president and sole owner of company had operational control and was individually liable); *Chao v. Vidtape*, Inc., 196 F.Supp.2d 281 (E.D.N.Y. 2002) (president had power to hire, fire, supervise, and determine pay rate and was individually liable); *Lopez v. Silverman*, 14 F.Supp.2d 405, 412-13 (S.D.N.Y. 1998) (president had "dominant" role over daily operations and was individually liable).

Skyliner and Peter Kim did not have any financial control over CK Tours and Win Li Tours. None of them had an ownership interest in CK Tours and Win Li Tours. (Lau Decl. ¶¶13,16,22 Kim Decl. ¶¶8,10). Joanna Lau was the sole manager and operator of CK Tours and Win Li Tours. Joanna Lau operates the two corporations and provides tour escort services to Foxwood Casino by supplying their bus attendants. (Lau Decl. ¶¶5,6,8,15,16). Skyliner and Peter Kim played no roles in the CK Tours and Win Li Tours' financials, but merely supplied their buses and drivers to CK Tours and Win Li Tours to enable their employees to serve their customers in Skyliner's buses. (Lau Decl. ¶¶5,6,7,10; Kim Decl. ¶¶12,13). However, Skyliner and Peter Kim did not exert financial control over CK Tours and Win Li Tours whatsoever. Joanna Lau alone has the authority to manage CK Tours and Win Li Tours' finances and she personally established employees' pay.

21

(Lau Decl. ¶¶15,16,18; Exhibit D- Nos. 2,3 of Plaintiffs' Responses to Defendants' Interrogatories; Exhibit B: Depo.Trans. of Xuguang Chang: 19:3-5; 84:21). In fact, Skyliner has its own books, maintains its own records and bank account(s), and manages its finances and employees independently. (Lau Decl. ¶13; Kim Decl. ¶10). The corporate documents further make it apparent that Skyliner and Peter Kim have no relationship with CK Tours and Win Li Tours.  (See, Exhibit A). Accordingly, there should be no doubt that Skyliner and Peter Kim are not jointly liable under FLSA nor NYLL because of the fact that they are both contractors of Foxwood Casino and the businesses are acquaintances by virtue of the Casino.

## I.   <u>CONCLUSION</u>

As stated above, Plaintiffs are not entitled to overtime as the undisputed facts established that Plaintiffs were employed by a motor carrier, and that their duties affected the safety of operation of motor vehicles in interstate commerce. Moreover, there exists no genuine dispute as to the fact that Defendants Skyliner and Peter Kim do not constitute joint employers of Plaintiffs. As such, Defendants respectfully request that the Court grant this motion for summary judgment under Rule 56 and dismiss all claims arising under FLSA and NYLL against Defendants Skyliner and Peter Kim

Dated: August 14, 2020
        Flushing, NY 11354

                                        Hang & Associates, PLLC

                                        By:____/s/ *Diana Seo*_____
                                         Diana Y. Seo, Esq.
                                        136-20 38th Avenue, Ste 10G
                                        Flushing, NY 11354
                                        (718) 353-8588
                                        *Attorneys for Defendants*