UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
XUGUANG CHANG, JUN NING, HAITAO
WANG a/k/a Leo Wang, and CHUAN HUI
WANG, on their own behalf and on behalf of
others similarly situated,

                 *Plaintiffs*,

                 18 Civ. 6174 (PAC)

    *-against-*

CK TOURS, INC d/b/a CK Tours; d/b/a Da
Xing Tours; WIN LI TOURS, INC d/b/a Win Li
Tour; d/b/a Heng Xing Tours; SKYLINER
TRAVEL & TOUR BUS CORP d/b/a Skyliner
Travel; HYON-SAK KIM a/k/a Peter Kim, and
JOANNA LAU a/k/a Kin-Ching Lau,

                 **OPINION & ORDER**

                 *Defendants*.
----------------------------------------------------------------X

    Plaintiffs Xuguang Chang, Jun Ning, Haitao Wang, and Chuan Hui Wang (collectively "Plaintiffs") bring this class action on behalf of themselves and others similarly situated against CK Tours, Inc., Win Li Tours, Inc., Skyliner Travel & Tour Bus Corp., Hyon-Sak Kim, and Joanna Lau (collectively "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs' lawsuit alleges, *inter alia*, that Defendants failed to pay them minimum and overtime wages during their employment as casino bus tour guides, in violation of the FLSA and NYLL.

    Defendants move for partial summary judgment on Plaintiffs' overtime wage claims and all claims pleaded against Skyliner and Kim. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the motion.

1

## BACKGROUND

### I. Factual Background

The following facts are uncontroverted. Defendants CK Tours and Win Li Tours are in the casino tour business. (Defs.' Stmt. 56.1 ¶ 1, ECF 83-6.) As part of that business, they facilitate daylong tours from Manhattan or Queens, New York to the Foxwoods Resorts Casino ("Foxwoods" or "Casino") in Connecticut. (*Id.* at ¶ 2.) For the price of a tour ticket, customers of the two companies receive roundtrip bus transportation and a casino bus tour guide to accompany them on their Foxwoods excursion. (*Id.* at ¶¶ 1–3.)

Defendant Joanna Lau has managed CK Tours and Win Li Tours since their incorporation in 2013.[1] (Compl. ¶¶ 24–27, ECF 1; Lau Affidavit ¶ 3, ECF 85.) Defendant Hyon-Sak Kim owns and operates Skyliner. (Defs.' Stmt. 56.1 ¶ 7; Kim Affidavit ¶ 3, ECF 84.) Skyliner supplies buses and drivers to travel agencies and other business entities. (Defs.' Stmt. 56.1 ¶ 8.) Since 2013, Skyliner has supplied CK Tours and Win Li Tours with buses and drivers on trips to the Casino. (*Id.* ¶ 9; Kim Affidavit ¶¶ 6–8.)

At different points between 2013 to 2016, Plaintiffs were employed as casino bus tour guides by CK Tours and Win Li Tours.[2] (Troy Decl. Exs. 1–4 ("Pls.' Affidavits"), ECF 90.)

---

[1] CK Tours and Win Li Tours are essentially the same corporate entity managed by Lau. The only difference between the two companies is that, between 2013 to 2016, CK Tours' bus departure point was Manhattan while Win Li Tours' bus departure point was Queens. (Defs.' Stmt. 56.1 ¶¶ 1–3, ECF 83-6.) Win Li Tours ceased operations in March 2016. (*Id.*)

[2] Xuguang Chang worked at CK Tours and Win Li Tours from March 2014 to September 2015. (Chang Affidavit, ¶ 3, ECF 90-1.) Jun Ning worked at CK Tours and Win Li Tours from July 2013 to May 2016. (Ning Affidavit, ¶¶ 3–4, ECF 90-2.) Haitao Wang worked at CK Tours and Win Li Tours from August 2013 to November 2015. (Wang Affidavit, ¶ 3, ECF 90-3.) And Chuan Hui Wang worked at CK Tours from October 2013 to January 2016. (Hui Wang Affidavit, ¶ 3, ECF 90-4.)

2

Plaintiffs' formal job description states:

> The Casino Bus Host(ess) a/k/a Casino Bus Escort a/k/a Casino Bus Matron will be required to board a coach bus and escort passengers to and from Casino. This Job Title specifically requires the individual to work a split shift as more fully delineated in the Duties & Responsibilities section herein. . . .
>
> [T]he Casino Bus Host(ess) will assist in the sale of tickets for that bus departure, the orderly boarding of the coach vehicle and during the trip to the Casino assist in the comfort of the passengers. Upon arrival at the Casino, all responsibilities for the passengers will be vested with the Casino and The Casino Bus Host(ess) will be off duty, free to enjoy the amenities of the Casino and take care of whatever personal business they may have.

(Troy Decl. Ex. 5 ("Official Job Description").)

Of concern here are Plaintiffs' responsibilities onboard the bus ride to and from Foxwoods. According to the Plaintiffs, their duties on the bus were wide ranging and fluid. (*See* Official Job Description; Seo Affirm. Ex. B ("Chang Deposition Tr."), at 19–22, ECF 83; Pls.' Opp. Brief, at 8–9, ECF 91.) Those duties involved: overseeing the orderly conduct of passengers (*see* Official Job Description); conveying Casino policies and information (Pls.' Opp. Brief, at 9); in cases of bus breakdown, arranging a replacement bus with the central office (*id.* at 8-9; Pls.' Affidavits); supervising drunk passengers (Pls.' Affidavits); occasionally shoveling snow out of the departure point (Wang Affidavit ¶ 26, ECF 90-3); providing navigation advice to the bus driver (Ning Affidavit ¶ 15, ECF 90-2); and communicating with Casino staff shortly before arrival. (Pls.' Opp. Brief, at 4.) Upon arriving at the Casino grounds, Plaintiffs were officially relieved of their work duties, but nevertheless, they continued to assist patrons with a variety of issues. (*Id.* at 9.)

## II. Procedural History

In July 2018, Plaintiffs brought this lawsuit as a FLSA collective action and as a Rule 23(b)(3) class action, alleging that the Defendants committed numerous violations of the FLSA

3

and NYLL by, *inter alia*, failing to pay them adequate wages during their employment as casino bus tour guides. In April 2019, the Court conditionally certified Plaintiffs' collective action under the FLSA but limited the class to similarly situated casino bus tour guides employed by Defendants from July 2015 to the present. (ECF 41.)

Defendants now move for partial summary judgment on Plaintiffs' overtime wage claims and all claims pleaded against Skyliner and Kim. (ECF 81.)

## LEGAL STANDARD

A party may move for (and a court will grant) summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is appropriate where "after adequate time for discovery and upon motion," the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a summary judgment motion, the district court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[T]he substantive law . . . identif[ies] which facts are material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly prelude the entry of summary judgment." *Id.* at 248. "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If "the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Thus "a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment] . . . ." *Anderson*, 477 U.S. at 252.

## ANALYSIS

### I. FLSA Overtime Claim

#### A. Applicable Law

Under the FLSA, employers must pay overtime wages to certain employees "at a rate not less than one and one-half times the regular rate" if those employees work more than forty hours in a week. *See* 29 U.S.C. § 207. This overtime wage requirement, however, is riddled with exceptions, one of which is the FLSA's motor carrier exemption. The motor carrier exemption derives (in part) from Section 213(b)(1), which states:

> (b) The provisions of section 207 of this title shall not apply with respect to—
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.

29 U.S.C. § 213(b)(1).

Turning to Section 31502(b)(1), or better known as the Motor Carrier Act ("MCA"), the Secretary of Transportation retains the authority to "prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. § 31502(b)(1). Read together, the FLSA and MCA provide the statutory basis for the motor carrier exemption.

5

It is well established that "exemptions to the FLSA are narrowly construed against the employers seeking to assert them" and that the "burden of invoking these exemptions rests upon the employer." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (cleaned up). To prove that the motor carrier exemption applies, the employer must show two things: (1) that the employer is "within the jurisdiction of the Secretary of Transportation by virtue of operating as a 'motor carrier' or 'motor private carrier,' as defined by" the MCA, *see Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008); and (2) that the employee's job functions affect the "safety of [vehicular] operations in interstate or foreign commerce." *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 698 (1947); *see United States v. American Trucking Ass'ns*, 310 U.S. 534, 553 (1940).

On the first requirement, the parties do not dispute (and the Court agrees) that Defendants are motor carriers for purposes of the MCA. The MCA defines a motor carrier as "a person[3] providing motor vehicle[4] transportation for compensation." 49 U.S.C. § 13102(14). That definition applies to each of the Defendants. CK Tours, Win Li Tours, and their manager Lau provide interstate transportation and casino tour services between New York and Connecticut; and Skyliner and Kim supply buses and drivers to facilitate such interstate travel. Accordingly, the Court finds that the first element of the motor carrier exemption is met.

The heavily litigated issue on this motion is the second element, which asks whether Plaintiffs held job duties that affected the safety of vehicular transportation. The Supreme Court has articulated several principles that shed light on this analysis. *First*, "the determination

---

[3] The MCA defines "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 49 U.S.C. § 13102(18); *see* 1 U.S.C. § 1.

[4] "Motor vehicle" is defined as "a vehicle, machine, tractor, trailer or semitrailer propelled or drawn by mechanical power and used on a highway in transportation." 49 U.S.C. § 13102(16).

6

whether or not an individual employee" qualifies for the exemption is "to be determined by judicial process" with "special consideration" given to relevant agency guidance. *Levinson v. Specter Motor Serv.*, 330 U.S. 649, 672 (1947). *Second*, whether an employee's duties affect the safety of vehicular operation depends on the "*character* of the activities rather than the *proportion* of either the employee's time or activities that is devoted to safety work." *Id.* at 674–75 (emphasis added); *see Morris v. McComb*, 332 U.S. 422, 431–32 (1947). In a similar vein, the employee's title, while relevant, is not dispositive. *Pyramid Motor*, 330 U.S. at 707–08 (1947); *see also Gutierrez Chacon v. P & S Select Foods, Inc.*, No. 17 CIV. 1037 (ER), 2019 WL 6170423, at *3 (S.D.N.Y. Nov. 19, 2019) ("[T]he name given to the employee's position is not controlling; rather, it is the character of the activities involved in the employee's performance of his job that controls."). *Finally*, in cases where the employee's safety-invoking functions "form so trivial, casual, or occasional a part of an employee's activities," the Supreme Court has found the motor carrier exemption to be inapplicable. *Pyramid Motor*, 330 U.S. at 960; *see Dauphin*, 544 F. Supp. 2d at 274.

### B. Application

Applying these principles, the Court concludes that Plaintiffs' employment functions come within the scope of the motor carrier exemption and therefore, summary judgment must be granted with respect to their FLSA overtime wage claims.[5] In considering the record as a whole,

---

[5] An interesting question that arises in the course of applying the motor carrier exemption is whether to examine the employee's work functions on an individual or class-wide basis. *See generally* Jason Mongillo, *Individual or Classwide? Determining How the MCA Exemption to the FLSA's Overtime Rules Should Be Applied*, 82 U. Chi. L. Rev. 2209 (2015). The Court of Appeals have split over this question. *Compare Troutt v. Stavola Bros.*, 107 F.3d 1104, 1108 (4th Cir. 1997) (individual approach), *and Goldberg v. Faber Indus., Inc.*, 291 F.2d 232, 235 (7th Cir. 1961) (same), *with Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475 (5th Cir. 2010) (class-wide approach). Despite the want of Second Circuit precedent on this question, the Court does not need to address this perplexing issue of law because all four Plaintiffs allege that they conducted substantially the same activities during the course of their employment. (*See* Pls.' Affidavits.) Accordingly, under either approach, the legal analysis remains the same.

it cannot be disputed that the Plaintiffs discharged duties that directly affected the safety of vehicular operations in interstate travel. As recounted above, Plaintiffs were responsible for supervising passengers on the bus and for ensuring their orderly behavior, especially those who had become inebriated at Foxwoods. (*See* Official Job Description; Pls.' Opp. Brief, at 8–9; Pls.' Affidavits.) Plaintiffs also bore the *sole* responsibility for arranging a replacement bus with the central office if the bus were to break down during a trip. (Pls.' Opp. Brief, at 8–9; Pls.' Affidavits.) And finally, Plaintiffs routinely provided navigation advice to the bus driver (*See, e.g.*, Ning Affidavit ¶ 15), and occasionally shoveled snow from the departure point so that the bus could safely park in times of inclement weather. (Wang Affidavit ¶ 26.) No matter how they are analyzed, any reasonable observer would say that these activities affected the safety of vehicular transportation. *See Pyramid Motor*, 330 U.S. at 698; *American Trucking*, 310 U.S. at 553. Accordingly, upon careful consideration of the record, the Court concludes that Defendants have satisfied the second element of the motor carrier exemption.

In reply, Plaintiffs contend that the motor carrier exemption is inapplicable because their employment did not involve "any duties facing the safety of passengers" or "giving safety instructions." (Pls.' Opp. Brief, at 8.) But the law does not concern itself with semantic descriptions of job functions, but rather the *actual* functions Plaintiffs undertook during the course of their employment. *See Levinson*, 330 U.S. at 674–75; *McComb*, 332 U.S. at 431–32. And on that score, Plaintiffs do not allege any facts showing that the character of their activities had so *de minimis* an effect on vehicular transportation as to render the motor carrier exemption inapplicable. *Pyramid Motor*, 330 U.S. at 707–08. True, they may not have instructed passengers on safety protocols, including the minimum requirement to buckle up. (Pls.' Opp. Brief, at 8.) However, the motor carrier exemption elides such a limited application and, as

noted above, calls for a more holistic analysis that inquires into "the character of the activities involved." *See Levinson*, 330 U.S. at 674–75. Accordingly, these semantic objections must be rejected.

Furthermore, Plaintiffs' reliance on a 1971 Department of Labor regulation is misplaced. As an initial matter, the Supreme Court has said that agency guidance on the scope and application of the motor carrier exemption deserves "special consideration" but the ultimate determination of whether the motor carrier exemption applies is committed to "judicial process."[6] *Levinson*, 330 U.S. at 672. But still, even consulting the relevant regulation, the Court finds additional support for its conclusion. The DOL regulation at issue provides that "driver's helpers" fall within the scope of the motor carrier exemption. It further describes such roles as:

> An employee may be a "helper" under the official definition even though such safety-affecting activities constitute but a minor part of his job . . . . Similarly, conductorettes on buses whose primary duties are to see to the comfort of the passengers are classified as "[driver's] helpers" whose such buses are being operated in interstate or foreign commerce, because in instances when accidents occur, they help the driver in obtaining aid and protect the vehicle from oncoming traffic.

29 C.F.R. § 782.4(b).

Plaintiffs fit hand in glove with this regulatory text: as casino bus tour guides, their job duties were to see to the "comfort" of the passengers (*see* Official Job Description; Pls.' Opp. Brief, at 8), and to diffuse safety related crises, such as bus breakdowns, on the interstate highways, (*see*

---

[6] There is no *Chevron* issue in this case. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (instructing courts, under certain circumstances, to defer to reasonable agency interpretations of ambiguous statutes). For *Chevron* deference to trigger, the relevant statute—in this case, the MCA—must first be ambiguous. *Id.* But since the late 1940s, the Supreme Court has interpreted the MCA to apply to "employees whose activities affect the safety of operation." *Levinson*, 330 U.S. at 660 (citing *American Trucking*, 310 U.S. at 553). That interpretation is clear and binding on this Court. Accordingly, any agency guidance speaking to the scope of the MCA, while relevant, does not trigger *Chevron* deference.

9

Pls.' Affidavits). So contrary to the Plaintiffs' beliefs, the Court finds the DOL regulation to further support its conclusion.[7]

In sum, the Court finds no genuine issues of material fact regarding the job functions held by the Plaintiffs during the course of their employment. Because those activities affected the safety of vehicular operations in interstate travel, the motor carrier exemption applies and summary judgment is granted with respect to the FLSA overtime wage claims.

## II. NYLL Overtime Claim

Defendants also move for summary judgment on Plaintiffs' overtime wage claims brought under the NYLL, which statutorily incorporates the FLSA's motor carrier exemption. The NYLL, in relevant part, reads:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended, provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (4) of such act, overtime at a wage rate of one and one-half times the basic minimum hourly rate.

12 N.Y.C.R.R. § 142-2.2.

---

[7] Plaintiffs reference § 782.4(a) of the DOL regulation, which provides a summary of past adjudications by the Secretary of Transportation regarding employees who fall within the scope of the motor carrier exemption. 29 C.F.R. § 782.4(a). Plaintiffs contend that because they did not specifically do work that fit any of these past precedents, the motor carrier exemption cannot apply. (Pls.' Opp. Brief, at 6-7.) This argument fails for two reasons. First, the Supreme Court has expressly held that the motor carrier exemption may apply to employees over whom the Secretary has not yet "affirmatively" exercised power. *Levinson*, 330 U.S. at 673. Second, § 782.4(a) does not purport to provide an exhaustive list of jobs that qualify for the motor carrier exemption; rather, it provides a descriptive summary of past employees who have been found to be exempted under the MCA. 29 C.F.R. § 782.4(a). Thus, that the Plaintiffs' precise role did not comport with the precedents outlined in § 782.4(a) does not make the motor carrier exemption inapplicable here.

In *Hayward v. IBI Armored Services, Inc.*, 954 F.3d 573 (2d Cir. 2020) (per curiam), the Second Circuit held: "[T]he NYLL clearly states that for employees who are exempt from the FLSA under the Motor Carrier Exemption, employers must provide overtime compensation at a rate of one and one-half times the minimum wage." *Id.* at 576. Applying *Hayward*, the Court concludes that although Plaintiffs do not qualify for overtime wages under the FLSA, they are nonetheless entitled, under the NYLL, to "overtime compensation at a rate of one and one-half times the minimum wage." *Id.* Therefore, summary judgment is denied with respect to Plaintiffs' NYLL overtime wage claims.

### III.  Claims Against Skyliner and Kim

Finally, Defendants contend that Skyliner and Kim were never Plaintiffs' employers, and as such, that summary judgment is warranted on all claims brought against these two defendants. Because the Court finds a genuine issue of material fact with respect to this issue, summary judgment is denied.

#### A.  Applicable Law

For liability to attach under the NYLL and FLSA, a defendant must be an employer as defined by those two statutes. "Neither the New York Court of Appeals nor the Second Circuit has decided whether the tests for 'employer' status are the same under the FLSA and the NYLL"; however, "courts within this circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Garcia v. JonJon Deli Grocery Corp.*, No. 13 CIV. 8835 AT, 2015 WL 4940107, at *3 (S.D.N.Y. Aug. 11, 2015) (cleaned up); *see also Jin Dong Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 258 (E.D.N.Y. 2015) (summarizing cases). The Court finds no reason to depart from this well-established practice and so it will analyze the employer status issue under the FLSA

11

framework.

The FLSA defines an employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Because the FLSA is a remedial statute, the Supreme Court "has emphasized the 'expansiveness' of this definition. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). To determine employer status under the FLSA, courts within this circuit employ the economic realities test, which asks "whether the alleged employer possessed the power to control the workers in question." *Id.* (cleaned up); *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). Factors relevant to this inquiry include whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman*, 172 F.3d at 139 (cleaned up). The economic realities test eschews "a narrow legalistic definition" and instead, instructs courts to consider the "totality of circumstances." *Id.*

## B. Application

The Court concludes that there are genuine issues of material fact with respect to Skyliner's and Kim's employer status and so, summary judgment on this issue must be denied. In support of their motion for summary judgment, Defendants rely heavily on the testimony of Kim and Lau, which promotes the common narrative that Kim had no control over the Plaintiffs' employment. Kim's affidavit alleges that Kim and Skyliner are completely separate and independent entities from CK Tours and Win Li Tours, and that Kim does "not know any of the named Plaintiffs." (Kim Affidavit ¶¶ 7–16.) Lau's affidavit echoes these allegations (Lau Affidavit ¶¶ 13–16), but also alleges that Lau unilaterally managed CK Tours and Win Li Tours,

and made all the decisions affecting the Plaintiffs, such as "hiring/firing or setting employees' rate of pay or work schedule[.]" (*Id.* ¶¶ 15–16, 18.)

The Plaintiffs, however, dispute this factual narrative with evidence that is sufficient to defeat the summary judgment motion. They allege: (1) that Kim and Skyliner received all the ticket proceeds from CK Tours and Win Li Tours (Pls.' Affidavits); (2) that Kim paid Plaintiffs' salaries and reimbursements for expenses incurred while on the job (*id.*); (3) that he rewarded Plaintiffs with Lunar New Year bonuses and meals (*id.*); and (4) that he controlled Defendants' bookkeeping. (*Id.*) In addition, Plaintiff Chang's deposition testimony states that Kim held himself out as the leader of CK Tours and Win Li Tours at business events and meetings. (Chang Deposition Tr., 130: 18–23.) From the vantage point of the economic realities test, these allegations raise genuine issues of material fact regarding the degree of control Skyliner and Kim wielded over the Plaintiffs' employment. Accordingly, summary judgment on this issue must be denied.[8]

In reply, Defendants argue that Plaintiffs' evidence is not enough to survive summary judgment because it incorporates hearsay statements that are inadmissible under the Federal Rules of Evidence. (Defs.' Reply, at 2–6, ECF 93.) Specifically, they argue that to the extent Plaintiffs' allegations rest upon past statements made by Lau, such evidence constitutes inadmissible hearsay, and therefore cannot be considered on this motion. (*Id.*) The contention fails for two reasons. *First*, to defeat a motion for summary judgment, "the nonmoving party" need not "produce evidence in a form that would be admissible at trial"; instead, it must simply provide sufficient evidence on the factual record that raises a genuine issue of material fact.

---

[8] As a fallback position in their brief, Plaintiffs argue that aside from the economic realities test, Defendants may be on the hook for liability under the novel single-enterprise theory. (Pls.' Opp. Brief, at 15-17.) Because the Court finds genuine issues of material fact under the economic realities test, it need not reach this issue.

*Celotex Corp.*, 477 U.S. at 324. Plaintiffs have met that burden here. *Second*, the argument also fails as a substantive matter because it fundamentally misunderstands the law of evidence: Lau is a defendant in this action and thus any past statements she may have made are non-hearsay statements that are admissible under Rule 801. *See* FED R. EVID. 801(d). Defendants' argument must therefore be set aside.

Finally, Defendants make a blanket argument that all of the Plaintiffs' evidence is contradictory. (Defs.' Reply, at 6–9.) Be that as it may, it is not this Court's role on summary judgment to resolve questions of credibility. That role instead properly lies with the trier of fact at trial. Accordingly, this contention must be rejected and summary judgment denied on the issue of Skyliner's and Kim's employer status.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment on Plaintiffs' FLSA overtime wage claims, **DENIES** summary judgment on Plaintiffs' NYLL overtime wage claims, and **DENIES** summary judgment on the issue of whether Skyliner and Kim were Plaintiffs' employers under the FLSA and NYLL. The Court will convene a telephonic conference on Thursday, April 15, 2021 at 10:00 AM to discuss next steps. The dial-in number for the conference is 888-363-4749 and the access code is 8539662.

The Clerk of Court is respectfully directed to terminate the motion at ECF 81.

Dated: New York, New York  
April 8, 2021

SO ORDERED

*[signature]*

PAUL A. CROTTY  
United States District Judge

14